The FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION As Receiver Of Sun Belt Federal Bank, F.S.B., Plaintiff-Appellant,

v.

George M. BONFANTI, Gerald E. Fackrell, Jr., et al., Defendants-Appellees.

No. 87–3012.

United States Court of Appeals, Fifth Circuit.

May 8, 1987.

Gene W. Lafitte, William R. Pitts, Anne E. Tate, James D. McMichael, New Orleans, La., Frederick R. Tulley, Baton Rouge, La., Anne Buxton Sobol, Associate Gen. Counsel, Washington, D.C., for plaintiff-appellant.

Robert V. McAnelly, Baton Rouge, La., for defendants-appellees.

Before GOLDBERG, POLITZ, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

The Federal Savings and Loan Insurance Corporation (FSLIC), acting as receiver for Sun Belt Federal Bank, F.S.B. (Sun Belt), appeals the district court's order requiring it to carry out pre-receivership settlement agreement between Sun Belt and several other parties. For the reasons given below, we reverse and remand with instructions to dismiss for lack of subject matter jurisdiction.

## I.

In 1984 Sun Belt made substantial construction loans for two real estate developments in Baton Rouge, Louisiana. The borrowers failed to repay the loans and the two real estate projects were not completed. As can be imagined, numerous lawsuits arose out of these delinquencies.

Several unpaid contractors and materialmen filed suit in Louisiana state courts against the borrowers for payment of services rendered and for materials supplied. The borrowers led by George Bonfanti and Gerald Fackrell filed suit in Louisiana state court against Sun Belt for breach of contract.[1] The instant federal case began when Sun Belt filed suit against Bonfanti, Fackrell, and others alleging fraudulent diversion of loan proceeds, breach of contract, and violations of federal law.

In an attempt to resolve all the disputes arising out of the loans and real estate projects, the district court convened a settlement conference between Sun Belt, the borrowers and other persons and entities claiming an interest in the entire affair. The settlement discussions therefore included persons and entities not parties to Sun Belt's federal action. After lengthy negotiations, a settlement agreement was achieved. In general the settlement provided that Sun Belt would receive title to the real estate projects and that the lienholders on the projects would release their claims for partial payments made by Sun

---

1. During this eruption of lawsuits one of the borrowers, "BFC–8" also filed for relief under the United States Bankruptcy Code.

Belt. In regard to Jefferson Lakes Apartments, the settlement provided that Sun Belt could complete it and that the building lienholders would perform the work on agreed upon terms. In regard to Essen Center, Sun Belt was obligated to complete the outer construction for $850,000. In December 1985 the district court approved the agreement.

Partial performance of the agreement occurred. Sun Belt received title to one of the projects, Jefferson Lakes, and made the requisite payment to the lienholders who then released their claims. On May 1, 1986, Sun Belt signed a 5.5 million dollar contract with the original contractors of the Jefferson Lakes project for completion of the project. But again the project would not meet with success.

On the same day the construction contract was signed, the Federal Home Loan Bank Board (the Bank Board) determined that Sun Belt was insolvent. The Bank Board appointed the FSLIC receiver for Sun Belt. Upon learning of the May 1st contract for the Jefferson Lakes project, the FSLIC notified the contractors not to begin work.

In late May 1986 the district court held a status conference to determine whether the settlement agreement was being performed. The FSLIC at this point asserted that the district court no longer had jurisdiction to enforce the settlement or adjudicate claims arising from it, and, accordingly, moved to dismiss the case. Other adherents to the settlement requested the district court hold FSLIC in contempt for failing to perform the settlement. In December 1986 the district court denied the receiver's motion to dismiss and ordered it to comply with the settlement, namely to complete the Jefferson Lakes project. The FSLIC perfected a timely appeal to this court.[2] We have jurisdiction pursuant to 28 U.S.C. §§ 1291, 1292(a)(1).

## II.

This case is controlled by the broad powers bestowed upon a receiver of an insolvent financial institution by Congress. Title 12 U.S.C. § 1464(d)(6)(C) provides that "no court may ... restrain or affect the exercise of power or function of a conservator or receiver." Likewise, Congress has provided that

> In connection with the liquidation of insured institutions in default, the corporation shall have power ... to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the .... other public authority having jurisdiction over the matter.

12 U.S.C. § 1729(d).

We have interpreted these sections as divesting federal courts of subject matter jurisdiction over all claims against thrift receiverships until the administrative claims process involving those claims is completed. *See North Mississippi Savings & Loan Ass'n v. Hudspeth*, 756 F.2d 1096, 1102 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986); *see also Chupik Corp. v. Federal Savings & Loan Insurance Corp.*, 790 F.2d 1269 (5th Cir.1986). In formulating this divestive rule, we stated in *Hudspeth:*

> Congress wanted the FSLIC to be able to act quickly and decisively in reorganizing, operating, or dissolving a failed institution, and intended that the FSLIC's ability to accomplish these goals not be interfered with by other judicial or regulatory authorities.

756 F.2d at 1101. Furthermore, in *Chupik* we emphasized the breadth of section 1464's language and *Hudspeth*'s holding by stating:

> [W]e re-emphasize that "resolution of even the facial merits of claims outside the statutory reorganization process" is a "restraint" within the scope of section 1464 and thus is to be avoided.

790 F.2d at 1270 (citing *Hudspeth*, 756 F.2d at 1102).

■ To restate yet again, upon the appointment of a receiver, herein the FSLIC,

---

**2.** On January 8, 1987, we stayed the district court's December 1986 order and expedited the consideration of this appeal.

all claims against the insolvent thrift, herein Sun Belt, are "switched to the administrative track, pursuant to 12 U.S.C. § 1464(d)(6)(C)", *Hudspeth*, 756 F.2d at 1103, and a federal court loses subject matter jurisdiction over the claims.

■ The FSLIC has begun the administrative process on claims asserted against Sun Belt. That process is not yet complete and upon completion is subject to review by the Bank Board and ultimately a federal court. In light of *Hudspeth*, the district court erred in denying FSLIC's motion to dismiss. Accordingly, we reverse that decision and remand with instructions to dismiss this action.

### III.

■ *Hudspeth* is too clear—there are no end runs around the receiver's broad realm of authority. That realm of authority includes the initial administrative evaluation of claims asserted against it or the insolvent thrift.[3] For these reasons, the district court's order is reversed and the cause remanded with instructions to dismiss for lack of jurisdiction.

REVERSED and REMANDED.

---

**3.** We are aware that the Ninth Circuit in *Morrison-Knudsen Co. Inc. v. CHG International, Inc.,* 811 F.2d 1209 (9th Cir.1987) (pet. for rehearing pending), rejected *Hudspeth*. *Morrison-Knudsen* simply refused to follow *Hudspeth*'s holding and cited no intervening Supreme Court precedent as guiding its choice of position. We have found no Supreme Court precedent that brings *Hudspeth* into question; we therefore are bound to follow it as a prior decision of our court regardless of the *Morrison-Knudsen* decision.