W.O. HENRY, Plaintiff–Appellant,

v.

INDEPENDENT AMERICAN SAVINGS ASSOCIATION; Independent American Savings Association, FSLA; and Independent American Real Estate, Inc., Defendants–Appellees.

SUNBELT SERVICE CORPORATION, Plaintiff–Appellant,

v.

INDEPENDENT AMERICAN SAVINGS ASSOCIATION and Independent American Savings Association, FSLA, Defendants–Appellees.

Jeff BEAN, Individually and as Managing General Partner for White Rock Texas Joint Venture, A Texas General Partnership, Plaintiff–Appellant,

v.

INDEPENDENT AMERICAN SAVINGS ASSOCIATION, et al., Defendants–Appellees.

Nos. 87–1844, 87–1849 and 87–1961.

United States Court of Appeals, Fifth Circuit.

Sept. 30, 1988.

Robert M. Greenberg, Greenberg, Fisk, Bush & Walker, Dallas, Tex., Ivan M. Scott, Jr., Bedford, Tex., for W.O. Henry.

Larry D. Carlson, Kenneth B. Tomlinson, Dallas, Tex., Colleen B. Bombardier, Office of Gen. Counsel, Washington, D.C., for amicus FSLIC.

C. Michael Moore, David P. Blanke, Martin Griffen, Locke, Purnell, Rain & Harrell, Dallas, Tex., for Independent American Sav. Assoc., et al.

Kathryn R. Wray, Baker & Botts, Dallas, Tex., for Federal Sav. & Loan Assoc. (FSLA).

John Bickel, William Brewer, Harold F. Marshall, Denise Gorges, Bickel & Brewer, Dallas, Tex., for Vineyard, Trustee for Estate of Independent American.

Richard Thornburg, Atty. Gen., Washington, D.C., Interested Person in 87–1844.

Mark R. Hall, David P. Stone, Moore & Peterson, Dallas, Tex., for Sunbelt Service Corp.

Edwin Meese, III, Atty. Gen., Washington, D.C., Interested Person in 87–1849.

Allan B. Diamond, Kim J. Askew, Hughes & Luce, Dallas, Tex., for Bean.

Before BROWN, POLITZ, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The district court permitted removal of these three state-court suits against a now-defunct savings and loan association and its successor. The court held that removal was proper because the suits implicate, to varying degrees, receivership functions of the Federal Savings and Loan Insurance Corporation. After removal, however, the court dismissed all claims against the successor-institution on the basis of our decision in *North Mississippi Savings & Loan Association v. Hudspeth.*[1] The court reasoned that these suits, like the one in *Hudspeth,* would impede the FSLIC's statutory power to resolve claims against a failed savings and loan association. We affirm the district court's ruling on the propriety of removal, but we reverse the court's ruling on the reach of *Hudspeth* and remand the cases for further proceedings.

I

Independent American Savings Association, a Texas-chartered, federally-insured savings and loan, was declared insolvent and closed on May 20, 1987, by the Federal Home Loan Bank Board. The FHLBB immediately placed the closed association, which we will refer to as "Old IASA," in receivership with the Federal Savings and Loan Insurance Corporation. At the FSLIC's direction, substantially all of Old IASA's assets and liabilities were transferred to a newly created, federally-chartered institution, Independent American Savings Assn., F.S.L.A., or "New Federal." By virtue of a "Special Agreement," the FSLIC retained wide superisory power over New Federal's daily operations. The FSLIC's approval was required for, among other things, the implementation of any "policy, goal or objective," the appointment or retention of any officer or director, the acceptance of any contract of employment, and the lease or purchase of any real estate.

The assets and liabilities assumed by New Federal included two commercial agreements that were the subject of pending state-court lawsuits, the *Sunbelt* and *Henry* cases. In *Sunbelt,* Old IASA had agreed to issue Sunbelt a letter of credit to secure a loan Sunbelt previously had made to a now-defunct affiliate of Old IASA. In *Henry,* Old IASA had provided Henry with financing for a real estate transaction. In their suits, Henry and Sunbelt alleged that Old IASA committed fraud and breach of contract in connection with the agreements. After the FSLIC's intervention, both plaintiffs amended their complaints to name New Federal as an additional defendant.

1. 756 F.2d 1096 (5th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986).

*Bean,* the third case consolidated here, also arose out of a real estate financing agreement involving Old IASA and assumed by New Federal. However, because Bean did not bring suit until after the creation of New Federal, his complaint did not name Old IASA as a defendant. Rather, the suit was brought against New Federal and several individual defendants also alleged to be involved in the real estate deal, namely Tommy G. Lane; John Carpenter; and Poscher, Bond, Wilk & Allison, Inc. Bean's complaint also differed from Henry and Sunbelt's complaints because in addition to the state-law claims, Bean alleged that Old IASA violated a federal law against tying arrangements in credit transactions.[2]

New Federal removed all three cases to federal district court, relying on a federal statute that permits removal of state-law claims brought against the FSLIC or a savings institution in receivership with the FSLIC.[3] On motions to remand, the court determined that removal was proper in each case, notwithstanding the fact that Bean did not name Old IASA—the only party in FSLIC receivership—as a defendant. Likewise, the court would not permit Henry and Sunbelt to amend their complaints so as to eliminate Old IASA as a party and, in their view, render § 1730(k)(1) inapplicable.

Bean moved for a preliminary injunction against the foreclosure of the properties subject to Bean's agreement with Old IASA. The district court denied the motion. The court then dismissed all three actions, finding the suits barred under the doctrine of *North Mississippi Savings & Loan Association v. Hudspeth.*[4] The court determined that the pending actions would "restrain or affect" the FSLIC's exercise of receivership powers over Old IASA, which

*Hudspeth* held to be prohibited by 12 U.S.C. § 1464(d)(6)(C).[5]

The plaintiffs in all three cases filed notices of appeal, Henry and Sunbelt from the dismissal and Bean from the denial of preliminary relief. Despite the pending appeals, the district court entered an order on January 7, 1988, inviting the government to file an *amicus* brief addressing the applicability of *Hudspeth.* After the FSLIC filed a brief contending that *Hudspeth* should not apply, the district court issued an order on February 2 vacating the December 17 order of dismissal.

Meanwhile, on December 23, 1987, Bean petitioned the Fifth Circuit for a preliminary injunction against foreclosure pending an appellate determination on the merits. We granted the motion in a published order,[6] finding that Bean's suit was likely to succeed because the district court probably erred in applying *Hudspeth* to a claim against a savings institution not in FSLIC receivership.[7]

## II

■ At the threshold, New Federal argues that there is "some authority" that the district court's February 2 order vacating dismissal of these actions forecloses appellate review. In *Oliver v. Home Indemnity Co.,*[8] for example, the district court amended its "final judgment" on a Rule 60(b) motion after one of the parties filed a notice of appeal; because the amendment rendered the issues on appeal non-final, this court dismissed the appeal.[9]

Nevertheless, most of our cases have recognized that "a district court is divested of jurisdiction upon the filing of the notice of appeal with respect to any matters involved in the appeal."[10] As this court

---

2. *See* 12 U.S.C. § 1464(q).

3. *See* 12 U.S.C. § 1730(k)(1).

4. 756 F.2d 1096 (5th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986).

5. See part IV of this opinion.

6. *Bean v. Independent American Savings Ass'n,* 838 F.2d 739 (5th Cir.1988).

7. *See id.* at 742.

8. 470 F.2d 329 (5th Cir.1972).

9. *See id.* at 331.

10. *Taylor v. Sterrett,* 640 F.2d 663, 667 (5th Cir. Unit A 1981); *see also Flynt Distributing Co. v. Harvey,* 734 F.2d 1389, 1392 n. 1 (9th Cir.1984) ("The district court had no jurisdiction to 'modi-

wrote in *Brown v. United Insurance Co.:*[11]

> While we may have sometimes allowed the district court to grant Rule 60(b) relief after notice of appeal and without appellate court permission, *see Oliver* [ ], such decisions, if we assume that they are consistent with prior and subsequent precedents of this Court, are explainable only as an aspect of the "dual jurisdiction" concept, rather than on the theory that the appellate court does not have jurisdiction.[12]

Because this court had jurisdiction over the present appeal at the time of the February 2 order, we need not give force to the district court's order vacating the judgment.

## III

■ Title 12 of the United States Code, section 1730(k)(1) deems all suits "to which the [FSLIC] shall be a party" to arise under federal law, thus permitting their removal to federal court. Although the FSLIC was not named as a party in *Henry* or *Sunbelt,* the complaints did name Old IASA, an institution in receivership with the FSLIC at the time of removal. As we explained in *Hudspeth,* even though the FSLIC has not been formally joined, it is a party in the contemplation of § 1730(k)(1) when the FSLIC is present as receiver of a named defendant.[13] As originally stated, then, the *Henry* and *Sunbelt* cases were

removable because their claims against Old IASA arose under federal law.

Henry and Sunbelt argue that even if their cases were properly removed, the district court abused its discretion in denying them leave to drop Old IASA from the complaint,[14] an action that they argue would have eliminated federal jurisdiction. The district court found that the amendment was merely a tactical maneuver to facilitate remand. The court also noted that it needed to retain jurisdiction in order to refer the claims to the FSLIC's administrative track, in accord with the district court's expansive reading of *Hudspeth.*

■ As we explain in part IV of this opinion, the district court erred in its second conclusion. Because the court denied leave to amend based on its understanding of *Hudspeth*—an understanding we now reject—we leave it to the district court to reconsider its decision on remand. We note however that "a plaintiff's voluntary amendment to a complaint after removal to eliminate the federal claim upon which removal was based will not defeat federal jurisdiction."[15] If it allows plaintiffs to drop Old IASA as a defendant, thus eliminating the original basis for federal removal jurisdiction, the district court may consider whether to remand the action to state court under the principles laid out in *Carnegie–Mellon University v. Cohill.*[16]

■ Unlike Henry and Sunbelt, Bean never named Old IASA as a defendant;

fy and supersede' its order after the filing of the notice of appeal.").

**11.** 807 F.2d 1239, 1242 n. 1 (5th Cir.1987).

**12.** *Id.* at 1242 n. 1 (citations omitted).

**13.** *See Hudspeth,* 756 F.2d at 1100 (citing *Farina v. Mission Investment Trust,* 615 F.2d 1068, 1074–75 (5th Cir.1980) (holding that under statute parallel to § 1730(k)(1) the FDIC is a "party" when present as receiver of named defendant)).

**14.** *See Ross v. Houston Independent School District,* 699 F.2d 218, 229 (5th Cir.1983) (holding that leave-to-amend rulings are subject to abuse-of-discretion review).

**15.** *Boelens v. Redman Homes, Inc.,* 759 F.2d 504, 507 (5th Cir.1985).

**16.** —— U.S. ——, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). The Supreme Court in *Cohill* resolved a

circuit split over whether a district court has discretion to remand pendent state claims to state court after all federal-law claims have dropped out of a removed case. The Court found that under the principles of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a district court has discretion to deal with the remaining pendent claims "in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Cohill,* 108 S.Ct. at 622. It characterized our decision in *In re Greyhound Lines, Inc.,* 598 F.2d 883 (5th Cir.1979) as disapproving of such remands. *See Cohill,* 108 S.Ct. at 618 n. 5. We do not, however, read *Cohill* as disturbing the principle of *Boelens. See supra* note 15. *Boelens* suggested that voluntary amendment of a complaint to eliminate the federal claim which made removal possible does not deprive the federal court of jurisdiction to hear the case. *Cohill* decided that once a federal court chooses

thus, the case properly could have been removed only on the basis of Bean's federal-law claim under the National Housing Act.[17] Bean objects to this result because the petition for removal was brought only by New Federal and was not joined by the other named defendants. Although failure of all defendants to join is usually a bar to removal,[18] if one defendant's removal petition is premised on removable claims "separate and independent" from the claims brought against other defendants, consent of the other defendants is not required.[19] "For if consent were required in such a case, a plaintiff might be able to prevent removal of a federal claim by joining an unrelated claim against a different defendant, and this would reduce the effectiveness of section 1441(c) in making separate and independent claims a basis for removal." [20]

Although the district court did not reach the issue, it could have correctly concluded that Bean's Housing Act claim against New Federal is separate and independent from Bean's state-law claims against the other defendants. The Housing Act claim is premised on an alleged "tying" arrangement in Old IASA's lending policy, a claim for which only the lending institution itself may be held liable.[21] Hence, even without the consent of other defendants, New Federal could remove the Housing Act claim, potentially taking the state-law claims into federal court as well.

This assumes, however, that the district court properly could have exercised jurisdiction over the *Bean* defendants other than New Federal, a proposition never tested by the district court. Although Bean's state-law claims against New Federal could have been removed under the doctrine of pendent jurisdiction,[22] no federal claim against the other defendants would support removal of the state-law claims that Bean brought against them. It is possible that these claims could be removed under a theory of "pendent-party" jurisdiction, a doctrine this circuit has accepted under some circumstances.[23] We leave it to the district court to determine on remand whether pendent-party jurisdiction is appropriate in this case, given the controlling factors we have identified: the factual relationships between the claims, judicial economy, convenience, and the plaintiff's ability to litigate his federal claim within a consolidated state-court action.[24]

## IV

Even in cases properly removable, another statute, 12 U.S.C. § 1464(d)(6)(C),

---

not to hear the pendent state claims, it has further discretion to either remand the case to state court or dismiss it, as it sees fit. These are separate issues. *See Boelens,* 759 F.2d at 507 n. 2 (discussing the circuit split resolved in *Cohill*). *Cohill* also did not affect a district court's right to deny amendment of a plaintiff's complaint after removal.

**17.** In the *Bean* order we did not specify the basis for removal, although we noted that if § 1730(k)(1) were the basis, removal would not be barred by that section's proviso against removal of suits involving only state-law rights and obligations of the institution and its investors, creditors or stockholders. *See Bean,* 838 F.2d at 741. We did not hold, however, that § 1730(k)(1) *provides* a basis for removal in the first place even though Bean's claim does not meet the prerequisites of § 1730(k)(1) removal, i.e., it is not brought against the FSLIC or an institution in receivership with the FSLIC.

**18.** *See Fontenot v. Global Marine, Inc.,* 703 F.2d 867, 870 n. 3 (5th Cir.1983); Wright, Miller & Cooper, *Federal Practice & Procedure* § 3731 (1985).

**19.** *See Bernstein v. Lind–Waldock & Co.,* 738 F.2d 179, 183 (7th Cir.1984); *see also Thomas v. Shelton,* 740 F.2d 478, 483 (7th Cir.1984).

**20.** *Bernstein,* 738 F.2d at 183.

**21.** *See* 12 U.S.C. § 1464(q)(1) (stating that "[a]n association" shall not engage in tying arrangements).

**22.** *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Ingram Corp. v. J. Ray McDermott & Co., Inc.,* 698 F.2d 1295, 1318 (5th Cir.1983).

**23.** *See Feigler v. Tidex, Inc.,* 826 F.2d 1435, 1438 (5th Cir.1987); *Smith v. National Flood Insurance Program,* 796 F.2d 90, 92–93 (5th Cir. 1986); *Boudreaux v. Puckett,* 611 F.2d 1028, 1031 (5th Cir.1980); *see generally* Wright, Miller & Cooper, *Federal Practice & Procedure* § 3567.2 (1984).

**24.** *See Boudreaux,* 611 F.2d at 1031.

limits the power of a court to interfere with the FSLIC's administrative determination of claims against a failed institution:

> Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a conservator or receiver.[25]

The district court held that this statute required dismissal of the plaintiffs' state-law claims against New Federal because New Federal is the remnant of an institution in FSLIC receivership and remains under the FSLIC's control.

The district court based its decision on our opinion in *North Mississippi Savings & Loan Association v. Hudspeth.*[26] In that case, the FSLIC was appointed receiver for the Old North Mississippi Savings & Loan. In exercising this authority, the FSLIC transferred all the assets and liabilities from Old North to a newly chartered institution, New North, with the exception of an existing employment contract between Hudspeth and Old North. Prior to the assumption-and-transfer transaction, Old North filed a state-court complaint seeking a declaration that the employment agreement was unenforceable; Hudspeth counterclaimed for breach of contract. After the FSLIC's intervention, Hudspeth amended his counterclaim to name New North as defendant, and the FSLIC removed the case to federal court. The district court then dismissed the suit on the

basis of the FSLIC's primary jurisdiction to resolve such claims as receiver.[27]

This court determined that the case could be removed to federal court under 12 U.S.C. § 1730(k)(1), insofar as Old North, an institution in FSLIC receivership, was a party.[28] We also affirmed the district court's dismissal of the case, finding that an action against New North would restrain the FSLIC's exercise of its powers as receiver of Old North and thus was precluded by § 1464(d)(6)(C).[29] We reasoned as follows:

> Hudspeth's attempt to charge New North with Old North's debt, despite the FSLIC's failure to transfer that liability, crosses the line drawn by the relevant statutes. The FSLIC, in working out the terms of the transfer between Old North and New North, essentially acted as a liquidator. It allocated the demands of competing claimants to Old North's limited assets by, in effect, relegating two classes of claimants—Old North stockholders, and Hudspeth—to second-priority status, leaving for satisfaction of their claims only the right of Old North to reacquire from New North any claims for officer malfeasance.[30]

After further consideration, we remain convinced of the conclusion we reached tentatively in the *Bean* preliminary-injunction order. There we distinguished *Hudspeth* from the present situation because court proceedings do not permit a "bypass of administrative remedies" where the FSLIC has explicitly determined that a new insti-

---

**25.** 12 U.S.C. § 1464(d)(6)(C).

**26.** 756 F.2d 1096 (5th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986).

**27.** *See id.* at 1099–1100.

**28.** *See id.* at 1100.

**29.** *See id.* at 1101–02.

**30.** *Id.* at 1102. This court has followed *Hudspeth* consistently. *See Chupik Corp. v. FSLIC,* 790 F.2d 1269, 1270 (5th Cir.1986) (per curiam); *FSLIC v. Bonfanti,* 826 F.2d 1391, 1393 (5th Cir.1987); *Coit Independence Joint Venture v. FirstSouth,* 829 F.2d 563, 564 (5th Cir.1987) (per curiam); *Godwin v. FSLIC,* 806 F.2d 1290, 1291 (5th Cir.1987); *Red Fox Industries, Inc. v. FSLIC,* 832 F.2d 340, 341 (5th Cir.1987); *Thomes v. Equitable Savings & Loan Ass'n,* 837 F.2d 1317, 1317 (5th Cir.1988).

We note that the Supreme Court recently granted certiorari to consider this court's decision in *Coit, see* —— U.S. ——, 108 S.Ct. 1105, 99 L.Ed.2d 267 (1988), in order to resolve a split in the circuits on the reasoning of *Hudspeth.* Compare *Lyons Savings & Loan Ass'n v. Westside Bancorporation, Inc.,* 828 F.2d 387, 394–95 (7th Cir.1987) (adopting *Hudspeth* ), *with Morrison-Knudsen Co. v. CHG Int'l, Inc.,* 811 F.2d 1209, 1216–18 (9th Cir.1987) (rejecting *Hudspeth* ). However, even if the Supreme Court overrules *Hudspeth,* that decision would not be inconsistent with today's determination that *Hudspeth* does not apply to the instant cases.

tution—one not in receivership with the FSLIC—will shoulder the failed institution's liabilities.

Because FSLIC arranges for the assumption of a closed institution's liabilities and contractual relationships by a new institution and transfers substantially all of the closed institution's assets to that institution, there is no necessity for a formal claims process to determine the validity and priority of creditors' claims or to oversee the distribution of the proceeds of the liquidation of the institution's assets. Instead, the business of the closed institution is continued by the "purchasing and assuming" institution, which deals with contract obligations and creditor claims in the courts as a private litigant.[31]

New Federal urged the district court to examine the substantive effect of the assumption-and-transfer transaction, contending that although the FSLIC may not have declared itself New Federal's "receiver," the FSLIC exercises such powers by virtue of the "Special Agreement." Moreover, New Federal contended that under the FSLIC's long-term plan, this transaction is merely the first step in New Federal's eventual liquidation. As such, the argument goes, New Federal deserves protection from court suits under a functional reading of § 1464(d)(6)(C). The flaw in this argument is that regardless of the FSLIC's future intentions, the FSLIC still has not set any priorities for those with claims against the institution. Until plaintiffs have claims against an institution *in receivership*, there simply is no administrative remedy to pursue.[32] Even if the court

took judicial notice that assumption-and-transfer transactions are often measures taken prior to liquidation, we still could not conclude that the FSLIC's actions are in any way "restrained" or "affected" until actual liquidation has begun. For this reason, the district court erred in dismissing the actions.

AFFIRMED in part, REVERSED in part, and REMANDED.

PATRICK E. HIGGINBOTHAM,
Circuit Judge, specially concurring:

The district court's decision in this case reflects the uncertainty of the developing law surrounding failed thrift institutions having its genesis in our opinion in *North Mississippi Savings & Loan Association v. Hudspeth*.[1] Given the present difficulties of the savings and loan industry, the holding in *Hudspeth*, and predictably so, has been both defended and attacked with equally predictable mixed judicial responses.[2] The Supreme Court recently granted certiorari in one of our circuit's cases following *Hudspeth*.[3] I am persuaded that this circuit should adhere to our holding in *Hudspeth*, although I am not in full agreement with the way *Hudspeth* has been read. I write separately to explain why. I do so because, in my view, the rationale of *Hudspeth*'s holding informs our rejection of this effort to expand its reach.

The principal opinion details *Hudspeth*'s facts. Essentially, we faced a suit against the FSLIC as receiver of a failed savings and loan. We affirmed the district court's dismissal of the suit "because Hudspeth's

---

**31.** *Bean*, 838 F.2d at 743 (quoting "FSLIC's Memorandum Regarding Subject Matter Jurisdiction" at 4–5, *Forman v. Talman Home Federal Savings & Loan Ass'n*, (D.N.J.1987) (No. 86–3119)).

**32.** Indeed, when Bean sought an adjudication by the FHLBB after the district court's dismissal, the Board dismissed the petition for want of jurisdiction, finding that "the foreclosure proceeding in question is not an action of FSLIC in its capacity as Receiver." FHLBB Order of Dismissal, No. 87–217 (Dec. 30, 1987).

**1.** 756 F.2d 1096 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986).

**2.** *Compare Lyons Savings & Loan Association v. Westside Bancorporation, Inc.*, 828 F.2d 387, 391 n. 4 (7th Cir.1987) and cases cited therein *with Morrison–Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209 (9th Cir.1987) and *Federal Savings & Loan Insurance Corp. v. Glen Ridge I Condominiums, Ltd.*, 750 S.W.2d 757 (Tex.1988).

**3.** *Coit Independence Joint Venture v. FirstSouth, F.A.*, 829 F.2d 563 (5th Cir.1987), *cert. granted*, —— U.S. ——, 108 S.Ct. 1105, 99 L.Ed.2d 267 (1988).

claims [could] be judicially reviewed only after their presentation to the Federal Home Loan Bank Board...." [4] We determined that "[t]he statutory scheme ... route[d] [Hudspeth's action] to the administrative process...." [5] *Hudspeth* holds no more than that one must pursue a claim against a failed savings and loan in FSLIC receivership by initially following the administrative procedures laid out in FHLBB regulations. We did not address the validity of the decision making process required by those regulations. Neither did we decide the effect the FSLIC's decision would have or the standards to be employed by a reviewing court.

In *Hudspeth,* we obeyed an explicit command of Congress:

Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a conservator or receiver.[6]

We noted that Congress gave the receiver the function of distributing assets. To the extent that courts became involved in resolving the merits of claims against the institution in receivership, asset distribution would be delayed. We considered this delay a "restraint," precluded by the statute.[7]

We were "fortified by the existence of FHLBB regulations setting forth procedures for FSLIC payment of creditor claims." [8] Congress gave the FHLBB broadly worded "power to make rules and regulations for the reorganization, consolidation, liquidation, and dissolution of associations ... and for the conduct of conservatorships and receiverships...." [9] Thus, since the FHLBB was "the enforcing agency for the relevant banking statutes," we deferred to its opinion that "the FSLIC is empowered to decide claims as part of its receivership function." [10]

The *Hudspeth* doctrine, itself a statutory rule, draws upon the judge-made doctrine of primary jurisdiction. Both *Hudspeth* and the doctrine of primary jurisdiction are the results of judicial attempts to effectuate Congressional intent with respect to a regulatory scheme. Primary jurisdiction is "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." [11] "That doctrine requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme. Court jurisdiction is not thereby ousted, but only postponed." [12] The primary jurisdiction doctrine acknowledges the need for uniformity of certain types of administrative decisions and gives play to the expert and specialized knowledge of regulatory agencies.[13]

*Hudspeth* rested on such concerns. We explained that

Congress wanted the FSLIC to be able to act quickly and decisively in reorganizing, operating, or dissolving a failed institution, and intended that the FSLIC's

---

4. *Hudspeth,* 756 F.2d at 1099.

5. *Id.* at 1101.

6. 12 U.S.C. § 1464(d)(6)(C).

7. *Hudspeth,* 756 F.2d at 1102.

8. *Id.*

9. 12 U.S.C. § 1464(d)(11).

10. *Hudspeth,* 756 F.2d at 1103.

11. *United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956); *Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 919 (5th Cir.1983). The *Morrison–Knudsen* court noted the possible application of the doctrine of "exhaustion of administrative remedies" to the FSLIC's claims process. *See Morrison–Knudsen,* 811 F.2d at 1223. Primary jurisdiction and exhaustion are closely related doctrines. *See Western Pacific,* 352 U.S. at 63–64, 77 S.Ct. at 164–165. Either could arguably be used to explain our holding in *Hudspeth.* Our purpose here is not to engage in a formalistic debate over the correct label to attach, but rather to explain the substantive basis for our decision.

12. *United States v. Philadelphia Nat'l Bank,* 374 U.S. 321, 353, 83 S.Ct. 1715, 1736, 10 L.Ed.2d 915 (1963) (citations omitted).

13. *United States v. Western Pacific R.R. Co.,* 352 U.S. at 64, 77 S.Ct. at 165.

ability to accomplish these goals not be interfered with by other judicial or regulatory authorities.[14]

Further, we reasoned that

resolution of even the facial merits of claims outside of the statutory reorganization process would delay the receivership function of distribution of assets: the FSLIC would not be able to determine how much to pay other claimants until the termination of the parallel litigation.[15]

Thus, we dismissed Hudspeth's claim to protect the integrity of a regulatory scheme enacted by Congress in outline form and given content by the FHLBB regulations.

Since litigation expenses deplete the limited pool of assets available, all creditors have an interest in expeditious and inexpensive resolution of claims against a failed institution. To the extent that FSLIC must litigate claims in state or federal court, distribution will be delayed and the pro rata recovery of each claimant will decrease. The administrative process allows the FSLIC to settle many claims without judicial intervention. In the administrative process, the agency can use its specialized knowledge concerning the assets of and claims against a failed institution, as well as its experience with prior receiverships, to arrive at a reasonable assessment of the value of a particular claim. The administrative process also imposes an element of uniformity, since the FSLIC can treat similar claims the same way. The success of this administrative process can

be demonstrated by the fact that in the three years since *Hudspeth,* this circuit has not yet faced an appeal from a FSLIC determination.

However, even in those cases where a party remains dissatisfied after administrative review and seeks again to pursue its claim in a United States district court or in a state court, the administrative process can reduce litigation costs and delays. The need for additional discovery will often be obviated, and the disputed issues may well be narrowed by the time a court gets involved. Thus, even where a court must ultimately address such claims, the undergirding policy of the doctrine of primary jurisdiction will be vindicated.

Congress in § 1464(d)(6)(C) expressly instructed courts to refrain from interfering in FSLIC proceedings, but did not directly express an intent to displace their jurisdiction. Those statutory signals are the foundation for our holding in *Hudspeth.* Indeed, the doctrine of primary jurisdiction might itself have justified our holding in *Hudspeth* even if Congress had not added § 1464(d)(6)(C) to its regulatory scheme. It follows that the Congressional decision to do so is a virtual, if limited, codification of the primary jurisdiction doctrine.

Admittedly, at least one later decision of this court described a *Hudspeth*-type dismissal in terms of subject matter jurisdiction.[16] I do not consider 12 U.S.C. § 1464(d)(6)(C) sufficiently explicit to override the general grant of subject matter jurisdiction in 28 U.S.C. § 1331.[17] Rather,

---

14. *Hudspeth,* 756 F.2d at 1101.

15. *Id.* at 1102.

16. *Federal Savings & Loan Insurance Corp. v. Bonfanti* stated that the statutory scheme "divest[s] federal courts of subject matter jurisdiction over all claims against thrift receiverships until the administrative claims process involving those claims is completed." 826 F.2d 1391, 1393 (5th Cir.1987). I am persuaded that the panel description of the lack of *subject matter* jurisdiction was inadvertent. No *Hudspeth* case in this circuit has foreclosed the possible return to federal court of a dismissed claimant. So the want of "subject matter" jurisdiction was never more than a refusal to hear the case without first resort to the administrative track.

17. *See* 12 U.S.C. § 1730(k)(1)(B) ("any civil action, suit, or proceeding to which the Corporation [FSLIC] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy"). The theory of lack of subject matter jurisdiction does have some support in the legislative history of the governing statutes. In a section-by-section analysis of the Financial Institutions Supervisory Act of 1966, which first added § 1464(d)(6)(C) to the books, the Senate Banking and Currency Committee stated, "The provisions of this subparagraph would, in effect, limit the *jurisdiction* of a court ... except at the instance of the Board, to restrain the exercise of the powers or functions of a conservator or receiver." S.Rep. No. 1482,

under *Hudspeth*, we have invoked principles of primary jurisdiction, deferring the exercise of our jurisdiction in order to protect the Congressional regulatory scheme. As the Supreme Court stated in *Philadelphia National Bank*, "[c]ourt jurisdiction is not thereby ousted, but only postponed" until completion of the administrative process.[18] The rationale of *Bonfanti* aside, no holding of any Fifth Circuit case is changed by resting it on the FSLIC's primary jurisdiction. In every case, we have dismissed the action only temporarily, pending completion of the administrative process.[19]

Two cases reject *Hudspeth* for supposedly granting the FSLIC receivership a full scale power of "adjudication." In *Morrison–Knudsen v. CHG Int'l, Inc.*, the Ninth Circuit interpreted *Hudspeth* as holding "that FSLIC had exclusive original jurisdiction to adjudicate creditors' claims, subject only to judicial review under the Administrative Procedure Act."[20] The court then argued that "adjudication" has never been among the ordinary functions of a receivership and, after an exhaustive examination of the governing statutes, found that Congress had granted no such power in this case.[21] Similarly, the Texas Supreme Court in *Federal Savings & Loan Insurance Corp. v. Glen Ridge I Condominiums, Ltd.*, determined that "[n]either the 'powers or functions' language in § 1464(d)(6)(C) nor the 'all things that may

be necessary' provision in § 1729(d) includes the power to adjudicate claims."[22]

Undoubtedly, these cases are wary of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, declaring the Bankruptcy Act of 1978 unconstitutional to the extent that it conferred Article III adjudicative power on bankruptcy judges who lacked life tenure and salary protection.[23] The Ninth Circuit in *Morrison–Knudsen* in its view was construing the governing statutes to avoid the *Northern Pipeline* problem.[24] In Texas, the Court of Civil Appeals declared the statutory scheme violative of Article III.[25] The Supreme Court of Texas in *Glen Ridge* ruled that the lower court should have avoided the Article III question by construing the statutes more narrowly.[26]

But the "adjudication" of *Hudspeth* is not the "adjudication" implicating Article III. We noted in *Hudspeth* that

[u]nder [the FHLBB] regulations, the FSLIC gives notice to creditors to present their claims, and then may disallow claims 'not proven to its satisfaction.' Any disallowed claims are submitted to the FHLBB for review.[27]

The Ninth Circuit conceded that these regulations validly fell within the power conferred on the FHLBB by § 1464(d)(11).[28] "They do not, however, confer on FSLIC

---

89th Cong., 2d Sess. 14 (1966), U.S.Code Cong. & Admin.News 1966, p. 3545 (emphasis supplied).

**18.** *See supra* text accompanying note 12.

**19.** Invocation of the primary jurisdiction doctrine raises the issue of whether the district court should merely stay the case or dismiss it. *See Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 517 n. 11 (5th Cir.1982). "Dismissal rather than a stay has been approved where there is assurance that no party is prejudiced thereby." *United States v. Michigan National Corp.*, 419 U.S. 1, 5, 95 S.Ct. 10, 12, 42 L.Ed.2d 1 (1974). Because none of the parties in cases following *Hudspeth* in this circuit have asked for a stay on the ground that they would be prejudiced by dismissal, this court has not yet determined under what circumstances a *Hudspeth* case should be stayed rather than dismissed. Such decisions rest in the first instance with the district court.

**20.** 811 F.2d at 1216.

**21.** *Id.* at 1217–22.

**22.** 750 S.W.2d 757, 759 (Tex.1988).

**23.** 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

**24.** 811 F.2d at 1221–22.

**25.** *Glen Ridge I Condominiums v. Federal Savings & Loan Insurance Corp.*, 734 S.W.2d 374, 386–87 (Tex.Civ.App.—Dallas 1986).

**26.** *Glen Ridge I*, 750 S.W.2d at 758–59.

**27.** *Hudspeth*, 756 F.2d at 1102.

**28.** *Morrison–Knudsen*, 811 F.2d at 1217.

the power to adjudicate." [29]  In the Ninth Circuit's view, "the Fifth Circuit ... concluded, that this administrative process embraces adjudication of claims." [30]

Deciding the merits of a claim against a savings and loan in receivership is not necessarily an "adjudication" implicating the Article III concerns of *Northern Pipeline.* When a federal agency is a party to litigation, it must evaluate the claims of its adversaries to develop a trial strategy, certainly no violation of Article III. Similarly, evaluating the merits of a claim against a failed thrift clearly constitutes a receivership function of the FSLIC. Congress directed the FSLIC to pay "all *valid* credit obligations" of the institution in receivership. [31]  Necessarily, the FSLIC must make some decision regarding which claims are valid. Further, the FSLIC has power "to settle, compromise, or release claims in favor of or against the insured institution[ ]...." [32]  Congress could hardly have intended the FSLIC to settle or compromise claims without considering their merits. Given that such an evaluation falls within the receivership functions of the FSLIC, then the FHLBB almost certainly could develop an administrative process for the systematic consideration of claims. After all, Congress directed the FSLIC to "liqui-

date [the institution's] assets in an orderly manner." [33]

Only when an agency's decision on a claim carries added weight in any later judicial review does it implicate Article III. [34]  Thus, it would be difficult to see an Article III restriction upon FSLIC decision-making followed by *de novo* federal court review on both the facts and the law. For instance, when a federal magistrate rules on an issue disputed by the litigants, no violation of Article III occurs provided the district court has *de novo* power to make the ultimate decision. [35]  As the standard of review began to require more deference, the agency action would begin to take on more of the characteristics of an Article III adjudication. [36]  Indeed, this appears to be the meaning which the Ninth Circuit attributes to the term adjudicate:

> FSLIC and the Board must be permitted to exercise some judgment before paying a claim against a thrift institution. Paying or refusing to pay, however, is not an adjudication of a claim. The language of the regulation does not purport to give FSLIC the power to enter conclusive factual and binding legal findings.... The administrative process that the regulation prescribes authorizes FSLIC and the Board, by disallowance of a claim and

---

**29.** *Id.*

**30.** *Id.*

**31.** 12 U.S.C. § 1729(b)(1)(B) (emphasis supplied).

**32.** 12 U.S.C. § 1729(d).

**33.** 12 U.S.C. § 1729(b)(1)(A)(v).

**34.** *See Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 3259, 92 L.Ed.2d 675 (1986) (considering standard of review applied to agency decision as part of Article III analysis); *Northern Pipeline,* 458 U.S. at 85, 102 S.Ct. at 2879 ("clearly erroneous" standard of review of bankruptcy court decisions relevant to determination that bankruptcy courts were not mere "adjuncts" of district courts).

**35.** *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985) (upholding court imposed rule that failure to file objections to the magistrate's report waives right to appeal). Of course, the Supreme Court has distin-

guished between magistrates and administrative agencies for some Article III purposes. *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 2416, 65 L.Ed.2d 424 (1980).

**36.** *Hudspeth* should not be read as holding that review of a claim disallowed by FSLIC could be pursued only under the APA. *See Hudspeth,* 756 F.2d at 1103. Rather, our point was that claimants could seek some form of judicial review after completion of the administrative process. The APA provides for judicial review of any "final agency action for which there is no adequate remedy in a court." 5 U.S.C. § 704. To hold that the APA applied exclusively would beg the question of whether a litigant could pursue claims against the failed institution under some more searching standard of review. If a court provides an adequate remedy, then APA review would be unnecessary. *Cf. Gillis v. United States Dep't of Health & Human Serv.,* 759 F.2d 565, 575 (6th Cir.1985) (no APA review of EEOC inaction where claimant has "adequate remedy in a court" against employer). These questions properly arise only after completion of the administrative process.

notice to the claimant, to determine *whether a dispute exists.* It does not empower FSLIC to *resolve the dispute with the force of law.*[37]

If the character of an agency decision for purposes of applying *Northern Pipeline* depends on the deference given to the decision on review, then, by definition, *Hudspeth* did not address whether the FSLIC may "adjudicate" claims within the meaning of Article III. Any attempt to do so, or to lay out the standards to be employed by a reviewing court, would have been pure dicta, unnecessary to the holding of the case. Indeed, this circuit still has not considered these questions, since no one has appealed to us from the FSLIC's administrative process or filed a suit asserting exhausted claims. Instead, and quite properly, we have refused to decide the constitutional issues raised by *Northern Pipeline* until we actually face them.[38] Apparently, then, the Ninth Circuit firmly disagrees with us on an issue we have not yet addressed.[39]

I am not persuaded by any of the attacks upon the essential holding of *Hudspeth.* When a court faces an action against the FSLIC in its capacity as the receiver of an insolvent savings and loan, the action should be dismissed until the claimant completes the administrative process required by the FHLBB regulations. That process will allow the receiver to settle or compromise outstanding claims against the institution. In that way, all creditors will benefit from an earlier and higher pro rata pay out of the assets. Even if some claims remain after completion of the administrative process, the pool of assets will presumably suffer a smaller loss from litigation expenses and the FSLIC will be able to pay off at least those creditors with a priority higher than the outstanding claims. At that point, if a litigant attempts to pursue in court his claims including those against the failed thrift, the court will decide the deference due the results of the administrative process applying the principles of primary jurisdiction cognizant of Article III and the seventh amendment as well.

---

**37.** *Morrison–Knudsen,* 811 F.2d at 1218 (emphasis in original).

**38.** *See, e.g., Coit,* 829 F.2d at 565 (dismissing Article III attack as unripe).

**39.** *See id.* at 565 n. 3 ("The effect of a FSLIC/FHLBB determination and the standard of review to which such determinations will be subject are apparently unsettled.").