# UNITED STATES *v.* MICHIGAN NATIONAL CORP. ET AL.

No. 73–1737.   Decided October 21, 1974

PER CURIAM.

This is an appeal from an order of the District Court dismissing without prejudice the Government's suit under § 7 of the Clayton Act, 38 Stat. 731, 15 U. S. C. § 18, to enjoin a bank holding company's acquisition. Appellee Michigan National Corporation (MNC), a bank holding company that owns five Michigan banks, seeks control of four additional Michigan banks. The planned acquisition will take the following form. MNC will charter four "phantom" banks, initially having no assets or deposits, whose stock it will acquire. The four target banks will be merged with the phantom banks, thereby becoming subsidiary banks of the holding company.

The form of the transaction brings it within the purview of two regulatory statutes. Section 3 of the Bank Holding Company Act of 1956, 70 Stat. 134, as amended, 80 Stat. 237, 12 U. S. C. § 1842, requires that an acquisition of a subsidiary bank by a holding company be approved by the Board of Governors of the Federal Reserve System. Section 18 (c)(2)(A) of the Federal Deposit Insurance Act, as amended by the Bank Merger Act, 80 Stat. 7, 12 U. S. C. § 1828 (c)(2)(A), requires approval of bank mergers by a designated agency, which in the case of an acquisition by a national bank is the Comptroller of the Currency. Each regulatory statute provides time limitations for antitrust suits challenging transactions that have gained administrative approval. The Bank Holding Company Act, § 11, as amended, 80 Stat. 240, 12 U. S. C. § 1849, provides that an antitrust suit arising from a holding company acquisition must be brought within 30 days of approval by the Federal Reserve Board. The Bank Merger Act, 12 U. S. C. §§ 1828 (c) (6) and (7), establishes a similar 30-day period following approval of a merger by the designated administrative body.[1] Under both statutes,

---

[1] Shorter periods are prescribed by the Bank Merger Act when

transactions having administrative approval cannot go forward during the period within which an antitrust suit may be brought, or during the pendency of a timely antitrust suit unless the court otherwise orders. The expiration of the period without the filing of an antitrust suit, however, allows the transacting parties to consummate arrangements without fear of challenge.

MNC made applications to both the Federal Reserve Board and the Comptroller for approval of its proposed transactions. Disapproval by either body would prevent MNC from completing the entire acquisition as planned. In October 1973 the Federal Reserve Board approved the acquisitions by the holding company. Without awaiting action by the Comptroller, the Government filed complaints under the Clayton Act to enjoin the acquisition; the suit was brought within the 30-day period prescribed by § 11 of the Bank Holding Company Act. The District Court dismissed the complaints without prejudice, ruling that the Government should bring a new lawsuit if and when the Comptroller approved the merger of the target banks with the "phantoms." The Government took a direct appeal to this Court, 32 Stat. 823, 15 U. S. C. § 29.

The District Court reasoned that the Government's suit was "premature," since a disapproval by the Comptroller would moot the Clayton Act claim. Whether viewed as a dismissal for lack of a "case or controversy" or as an exercise of equitable discretion, we believe the District Court's action was error.

The view that the possibility of disapproval by the Comptroller deprived the District Court of an actual controversy to adjudicate, a position taken by appel-

---

the designated agency finds that expedition of the transaction is necessary "to prevent the probable failure of one of the banks involved." 12 U. S. C. §§ 1828 (c) (4) and (6).

lees below, cannot be squared with the many decisions permitting a federal court to stay proceedings in a case properly before it while awaiting the decision of another tribunal. This is the holding of *Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496 (1941), which launched the abstention doctrine. *Pullman* held that where an order of the Texas Railroad Commission was challenged in a District Court as violative of the Fourteenth Amendment and as outside the Commission's authority under state law, the federal court should stay proceedings pending a resolution by the Texas courts of the state law question of the Commission's authority. In succeeding cases that have applied the *Pullman* doctrine, the common practice has been for the district court to retain jurisdiction but to stay proceedings while awaiting a decision in the state courts. See, *e. g., Chicago* v. *Fieldcrest Dairies, Inc.,* 316 U. S. 168 (1942); *Spector Motor Service, Inc.* v. *McLaughlin,* 323 U. S. 101 (1944); *Government & Civic Employees Organizing Committee* v. *Windsor,* 353 U. S. 364 (1957); *Louisiana Power & Light Co.* v. *City of Thibodaux,* 360 U. S. 25 (1959); *England* v. *Louisiana State Board of Medical Examiners,* 375 U. S. 411 (1964); *Lake Carriers' Assn.* v. *MacMullan,* 406 U. S. 498 (1972). That a favorable decision in the state court might moot the plaintiff's constitutional claim brought to the federal court was never thought to create any jurisdictional impediment. For jurisdictional purposes, it suffices that there is a "real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Insurance Co.* v. *Haworth,* 300 U. S. 227, 241 (1937).

The same procedure has generally been followed when the resolution of a claim cognizable in a federal court

must await a determination by an administrative agency having primary jurisdiction. See *Carnation Co.* v. *Pacific Westbound Conference,* 383 U. S. 213, 222–224 (1966); *General American Tank Car Corp.* v. *El Dorado Terminal Co.,* 308 U. S. 422, 432–433 (1940); *Mitchell Coal Co.* v. *Pennsylvania R. Co.,* 230 U. S. 247 (1913). Dismissal rather than a stay has been approved where there is assurance that no party is prejudiced thereby.[2] See *Far East Conference* v. *United States,* 342 U. S. 570 (1952).

In the present case we cannot say with assurance that the Government will not be prejudiced by a dismissal. Section 11 of the Bank Holding Company Act provides that "[a]*ny* action brought under the antitrust laws arising out of an acquisition, merger, or consolidation transaction" shall be commenced within the 30-day period following approval by the Board. 12 U. S. C. § 1849 (b) (emphasis added). By the time the Comptroller approves the mergers, the 30-day period following Board approval may have long since expired.[3] By waiting

---

[2] We may put to one side cases where the administrative agency has exclusive jurisdiction to consider the complaint initially brought in court, *e. g., Pan American World Airways* v. *United States,* 371 U. S. 296 (1963), or those in which Congress, by depriving the agency of a remedy, is deemed to have withheld it from the courts as well, *e. g., Montana-Dakota Utilities Co.* v. *Northwestern Public Service Co.,* 341 U. S. 246 (1951). In such cases, the court must of course dismiss the action.

[3] On May 16, 1974, nearly three months after the District Court dismissed the case, the Comptroller approved the merger of two target banks with their corresponding "phantoms." The Government filed a new Clayton Act complaint against the approved mergers within the period prescribed by the Bank Merger Act. The District Court has not yet ruled on a motion by MNC to dismiss that complaint because of the pendency of this appeal. The Comptroller has made no decision on MNC's proposed mergers involving the two remaining target banks.

6

for approval of the Comptroller before filing its lawsuit, the Government runs the risk that complete relief will be barred by the provisions of § 11. MNC disputes this, arguing that so long as the Government brings suit following the Comptroller's approval within the time prescribed by the Bank Merger Act, it will be able to challenge the merger of the target banks with the "phantoms," the only event which gives the transaction competitive significance.

Congress does not appear to have considered expressly the application of the time limitations to transactions falling within both regulatory statutes.[4] While the question is not free from doubt, there is a procedure that preserves beyond doubt the Government's ability fully to pursue its Clayton Act suit and at the same time produces no hardship to the other party.[5] Where suit is brought after the first administrative decision and stayed until remaining administrative proceedings have concluded, judicial resources are conserved and both parties fully protected.

The judgment of the District Court is vacated and the case remanded for the entry of further orders consistent with this opinion.

*So ordered.*

---

[4] Though the two statutes of limitations were enacted in the same year, there is no indication in the legislative history that Congress considered their relationship in the case of a transaction within the purview of both regulatory acts. See S. Rep. No. 299, 89th Cong., 1st Sess. (1965), and H. R. Rep. No. 1221, 89th Cong., 2d Sess. (1966) (Bank Merger Act); S. Rep. No. 1179, 89th Cong., 2d Sess. (1966), and H. R. Rep. No. 534, 89th Cong., 1st Sess. (1965) (Bank Holding Company Act).

[5] Because proceedings in the District Court would be stayed, MNC's assertion that the lawsuit "placed the defendants in the position of having to prepare to defend, in an antitrust action, transactions which they did not have regulatory approval to consummate," is simply a makeweight. (Motion to Affirm 6.)