[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The state of Connecticut, its Department of Administrative Services (DAS) and its department of public safety (DPS) have appealed from a decision of the Connecticut employee's review board (ERB) sustaining the appeal of the respondent, Daniel Cawley, who had been discharged on May 31, CT Page 8309 1991, from his position as a Data Processing Manager 3 (DPM 3) for DPS. The plaintiffs claims that the layoff was made pursuant to G.S. 5-241 (a), which provides that no state employee in the classified service who has been performing his duties satisfactorily shall be laid off for lack of work or other reasons not involving poor performance, "if any other employee in the same classification performing comparable duties with less state service is to be retained in the same department, agency or institution." The ERB found that Cawley was given the classification of DPM 3 in May, 1986, when he was first hired by DPS, and that he remained in that classification until his discharge at an annual salary approximately $20,000 higher than that of a DPM 1 data processor, whose duties included fewer or no managerial responsibilities. The ERB concluded, however, that DPS should have reviewed Cawley's classification as a DPM 3 and probably should have changed it to a DPM 1 on November 30, 1990, when his supervisory duties had ceased and he was assigned to special projects on which he was working when he was laid off. The ERB ordered as follows:
 The Department of Public Safety shall, with the assistance of the Department of Administrative Services, review the position classification of Daniel Cawley's Data Processing Manager 3 position, as of the time when he was assigned to new duties, November 30, 1990, and, based on such duties, determine the appropriate classification of his position.
 Thereafter, the Department of Public Safety shall follow normal procedures for determining which position(s) it would have laid off in the spring of 1991.
 Thereafter, the Department shall follow normal procedures for determining which employee(s) occupying such position(s) would have been laid off.
 If the results of the above decisions indicate that Daniel Cawley was wrongfully laid off on May 31, 1991, he shall be reinstated as of that date, with appropriate back pay, seniority and other benefits.
CT Page 8310
 I
The ERB order directs DPS, with the assistance of DAS, to: (1) review Cawley's DPM 3 position based on the new duties to which he was assigned on November 30, 1990, and determine the appropriate classification of his position; (2) follow normal procedures for determining which positions it would have laid off in the spring of 1991; (3) if the outcome of those two directives indicates that Cawley was wrongfully discharged on May 31, 1991, reinstate him as of that date with appropriate back pay, seniority and other benefits. Because of the contingent nature of the order and the lack of direction as to how back pay is to be calculated, this court ordered that additional briefs be filed by the parties addressing the jurisdictional problem of whether the ERB has rendered a final decision. The parties have now filed briefs discussing that issue.
As the terms of the ERB order provide, before Cawley will be entitled to any relief, DPS must determine the proper classification of the work to which he was assigned on November 30, 1990. In its decision the ERB indicates that it expects Cawley to be "placed in a DPM 1 or lower class" as a result of the review it has ordered, but, nevertheless, leaves that determination to the DPS. (Memorandum of Decision, p. 6). The ERB also recognizes that its decision may not be helpful to Cawley, because, after the proper classification of his duties has been determined, the state agencies involved must then decide "(a) which classification(s) should have borne the lay off, and (b) which employee(s) in that class was least senior, and should have been let go." (Id.)
The contingencies upon which Cawley's right to relief depends pursuant to the order, raise significant concerns related to final judgment jurisprudence that militate against review of the merits of that order at this stage of the proceeding. "The expeditious resolution of disputes counsels against review of trial court rulings that do not finally dispose of all the issues between the litigating parties." Schiefflin Co. v. Department of Liquor Control, 202 Conn. 405,409 (1987). This consideration, which promotes the conservation of congested judicial resources and also those of the parties, is equally applicable to review of administrative agency decisions. Id., 409-10; Connecticut Bank Trust Co. CT Page 8311 v. CHRO, 202 Conn. 150, 156 (1987). It is the basis for the "well rounded policy against piecemeal review of agency action." Connecticut Bank Trust, Co. v. CHRO, supra 156. In this case, unless review should result in a reversal of the ERB's interpretation of the pertinent statutes, it is likely that further appeals will be generated concerning the issues left unresolved by the decision.
Another significant consideration underlying the requirement of finality for review of an agency decision is the doctrine of ripeness as it has been applied to administrative rulings. "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner,387 U.S. 136, 148-49 (1967). In this case it is fair to characterize the dispute over statutory interpretation as "abstract" until it is known whether the reclassification ordered by the ERB would result in Cawley's reinstatement.
The contingencies upon which his reinstatement depends pursuant to the order, his proper job classification on the date of discharge, the positions ERB would have eliminated on such date, and his seniority over that of other employees within the selected classification, must yet be determined. Unless these questions are resolved so as to entitle Cawley to reinstatement, this case would be moot and review of the statutory interpretation issue would be an exercise in futility.
The three contingencies implicit in the ERB order also involve the jurisdictional issues of aggrievement and mootness. If any of them are resolved adversely to Cawley, he would not have suffered any harm from a possibly erroneous interpretation of the statutes by DPS because he would not have been entitled to reinstatement in any event. Prior to undertaking resolution of the statutory construction issues, the ERB might well have insisted that the DPS decide the questions upon which Cawley's reinstatement depends, since they involve aggrievement. The function of administrative agencies is not to decide legal questions whose resolution will not afford some practical relief to a party. CT Page 8312
Aggrievement is a jurisdictional prerequisite throughout the course of a legal proceeding, including its appellate stages. Since it is not possible for this court to determine whether Cawley has been aggrieved by the interpretation of the statutes followed by DPS until the contingencies specified in the ERB order have been resolved, those matters should be decided before proceeding further with this appeal. The burden imposed on DPS in making the determinations required by the ERB order at this time is not particularly onerous in comparison to that thrust upon the courts by this appeal, which would be an academic exercise prior to a final decision on Cawley's right to reinstatement.
"The test that determines whether . . . a decision is a final judgment turns on the scope of the proceedings on remand: if such further proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings will require the exercise of independent judgment or discretion and the taking of additional evidence, the appeal is premature and must be dismissed." Sandora v. Fairfield,214 Conn. 552, 556 (1990); see Cleveland v. U.S. Printing Ink, Inc., 218 Conn. 181, 186 (1991). If the only issue to be addressed on remand were the calculation of Cawley's back pay on his reinstatement, the further proceedings ordered to be conducted by DPS might conceivably be regarded as ministerial, if there were no dispute about his appropriate salary after his managerial responsibilities ended on November 30, 1990. It is likely, however, that Cawley will contest any attempt by DPS to seek a credit for the overpayment that he received while performing nonmanagerial duties after that date until his discharge. He will likely claim the salary he was receiving at the time of his discharge as the basis for calculating back pay.
In any event, the determination of the proper job classification for Cawley's new duties after his transfer can hardly be deemed ministerial. Similarly, the decision as to which positions the DPS would have laid off in the spring of 1991 requires the exercise of judgment or discretion. The determination of these issues pursuant to the ERB order would also require DPS to prepare an evidentiary record of the basis for its actions that could be presented to the ERB to prove compliance with its order. CT Page 8313
In their brief the state agencies rely on New Haven v. New Haven Police Union Local 530, 210 Conn. 597 (1989) for support of their claim that the ERB order is a final decision. In that case the state board of labor relations had rendered a final-decision determining the unfair labor practice claims against the city by issuing a cease and desist order and granting other relief, but had reserved jurisdiction with respect to the amount of compensation due to the many police officers. The court found that "[s]uch a reservation was appropriate in this instance because the time required for adjudication of the numerous claims of the individual officers might well have delayed enforcement of the cease and desist order." Id., 506. No such exceptional circumstances, however, are presented in this case. The ERB order provides no relief but leaves Cawley's right to reinstatement subject to the resolution by DPS of the contingencies stated in the order, thus requiring the exercise of its judgment or discretion. It is not clear whether the ERB intended to render a final decision, because its decision is not so labeled. Whether or not it intended to do so, however, the finality of a decision must be determined on the basis of its terms. Because DPS must make further judgements [judgments] based on facts not contained in the present record in order to implement the order, this court concludes that the ERB decision is not final.
 II
Ordinarily a conclusion that an appeal has been taken from a decision that was not final would require a dismissal for lack of subject matter jurisdiction. In this case, however, such a dismissal would jeopardize the plaintiff's right to appeal from the ERB decision concerning its interpretation of the statutes to require that, before any lay off may be effectuated, a state agency must review the classification of the employee involved and reclassify him based upon the duties he is performing at that time, if his existing classification is inappropriate. After DPS has made the determinations required by the ERB order, it would have no right to return to the ERB for issuance of a final decision triggering its right to appeal to the superior court. General. Statutes 5-202 (a) limits the right of appeal to the ERB to state employees.
If Cawley is dissatisfied with the results of the DPS CT Page 8314 determinations, he would be entitled to appeal to the ERB. The plaintiffs, as parties to his appeal, would also be heard by ERB and would have the right to appeal from its final decision. They could raise in that appeal the statutory construction issues that they prematurely seek to have adjudicated in this proceeding. If Cawley is satisfied with the results of the further proceedings before DPS and seeks no further review, the mechanism for DPS to obtain judicial review of the statutory interpretation issue is unclear. Aside from the forty-five day time limit on appeals from a final decision of a state agency; General Statutes 4-182 (c); we have concluded that the ERB has not yet rendered a final decision. Without the right of further access to the board by DPS, the ERB would have no occasion to render a final decision affording the opportunity for judicial review.
This conundrum over the right to judicial review of the ERB decision might well entitle the plaintiffs to proceed with their appeal of that decision as an interlocutory order qualifying for such review under the test prescribed in State v. Curcio, 191 Conn. 27, 31 (1983). "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id. Under the second alternative, the unavailability of a right of appeal on the part of DPS after it has complied with the mandate of ERB would warrant review of the ERB decision despite its interlocutory character. That solution to the conundrum, which entails the consequences of piecemeal review and consideration of abstract and possibly moot issues that may ultimately have no practical consequences for the parties, need not be resorted to in this case, however, because there is another way of preserving the plaintiff's right to judicial review after the ERB's decision has been finalized.
The ERB should have recognized that its decision was not final but merely interlocutory when it was rendered and should have retained jurisdiction of the appeal for the purpose of ultimately rendering a final decision after DPS had resolved the contingencies as directed by the order. "If a particular agency action is required by law, the court, on sustaining the appeal may render a judgment that modifies the agency decision, orders the particular agency action, or orders the CT Page 8315 agency to take such action as may be necessary to effect the particular action." General Statutes 4-182 (k). This statutory provision authorizes a court to modify an agency decision to correct a deficiency therein. This court concludes that the failure to make provision for further review of the interlocutory ERB order, thus making problematic the right of DPS to judicial review of the agency decision, constitutes an omission that warrants sustaining the appeal and modifying the decision by adding a provision to the order retaining jurisdiction in the ERB to review the action of DPS in complying with its interlocutory order.
This court's approach to the difficulties posed by the lack of a final judgment in this case is analogous to that devised by the federal courts in applying the doctrine of primary jurisdiction. In United States v. Michigan National Corp., 419 U.S. 1 (1974), the government had brought an antitrust suit to enjoin the acquisition of a bank that had been approved by the Federal Reserve Board but was still pending before the Comptroller of the Currency, whose consent was also required. It was held that the trial court should have stayed the action rather than dismiss it. "Where suit is brought after the first administrative decision and stayed until remaining administrative proceedings have concluded, judicial resources are conserved and both parties fully protected." Id., 6. Similar cases in which the federal courts, have followed the policy of staying rather than dismissing suits that have been brought prematurely without first obtaining an administrative determination of the issues when required, thus preserving procedural rights that would otherwise be jeopardized are Mitchell Coal Co. v. Pennsylvania R. Co., 230 U.S. 247, 267 (1913) and General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 433 (1940).
The policy underlying these decisions is to allow the administrative agency functions to be completed without impaling a litigant on the procedural catches involved in final judgment jurisprudence. Conceivably a stay might be appropriate here, but 4-182 (k) provides a simpler remedy.
The appeal is sustained because of the omission from the terms of the order of a provision retaining jurisdiction in the ERB to review the compliance by DPS with the order. The court hereby renders judgment modifying the ERB order by adding a provision thereto for retention of such jurisdiction CT Page 8316 by the ERB which may be invoked by any of the parties.
David M. Shea State Trial Referee