SOUTH AUSTIN COALITION COMMUNITY COUNCIL, et al., Plaintiffs–Appellants,

v.

SBC COMMUNICATIONS INC. and Ameritech Corporation, Defendants–Appellees.

No. 99–1477.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1999.

Decided Sept. 28, 1999.

Clinton A. Krislov (argued), Krislov & Associates, Chicago, IL, for Plaintiffs–Appellants.

Steven P. Handler, McDermott, Will & Emery, Chicago, IL, for Defendant–Appellee SBC Communications, Inc.

Stephen M. Shapiro (argued), Mayer, Brown & Platt, Chicago, IL, for Defendants–Appellees.

Theodore A. Livingston, Mayer, Brown & Platt, Chicago, IL, for Defendant–Appellee Ameritech Corp.

Before EASTERBROOK, KANNE, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

Ameritech and SBC Communications, two of the "Baby Bells" carved out of AT&T as part of the antitrust divestiture finally approved in 1983, have agreed to merge. The Antitrust Division of the Department of Justice concluded that the merger is generally compatible with competition, though as a condition of receiving the Department's approbation the merging firms promised in a consent decree to spin off SBC's cellular phone business in St. Louis and other places where it now competes with Ameritech. Dissatisfied with the prospect that the merger would proceed with only this accommodation, five plaintiffs (all of them Ameritech customers) filed this suit under 15 U.S.C. § 26, seeking an injunction on the ground that the merger would violate the antitrust laws. The district court dismissed the suit

as premature, concluding that the dispute will not be ripe for adjudication until all required state and federal approvals have been obtained—for the agencies might insist on changes that would substantially alter the merger's competitive effects. 1999 U.S. Dist. LEXIS 949 (N.D.Ill.).

The Baby Bells (more formally, the regional Bell operating companies) were created as monopolies of local telephone service, separated from AT&T's national network to facilitate competition in interstate service. See William J. Baumol & J. Gregory Sidak, *Toward Competition in Local Telephony* (1994). Each Baby Bell must afford nondiscriminatory access to all interexchange carriers, and the consent decree required each to refrain from competing in long-distance markets (for fear that it would use its monopoly of local lines to restrict competition in long-distance communications). A fundamental assumption behind the 1983 reorganization is that local phone service is a natural monopoly because average total costs of both land lines and call switching decline through the entire range of demand. Thus the seven Baby Bells (with one local exchange carrier subsidiary for each state) were left as monopolies, with prices constrained by state public utilities commissions, while the competitive national and international segments of the business were regulated by the Federal Communications Commission. The organization of local exchange carriers did not matter much.

Technological changes have drawn the premise of the 1983 reorganization into question. Communications now do not necessarily depend on costly land lines; the market for cellular phone service is (or can be) competitive. The local switching service also has changed; formerly done by expensive electromechanical solenoids and relays, switching now is handled by computer. Many large customers have found it economical to install private branch exchanges in order to bypass the Baby Bells, something that would not be feasible if local switching still were a natu-

ral monopoly. The regional phone companies have built a great deal of new infrastructure, much of it optical fiber that can carry much more traffic than does copper; cable TV firms and Internet service providers likewise have installed high-capacity circuits, producing at least potential competition between cable and phone companies to supply the same services. At least three more methods, each amenable to multiple suppliers, are coming into use. David D. Clark, *et al.*, *High–Speed Data Races Home*, 281 Scientific American 94–115 (Oct.1999). The Internet has blurred the distinction between local and long-distance communications, see *Illinois Bell Telephone Co. v. WorldCom Technologies, Inc.*, 157 F.3d 500 (7th Cir.1998), and many of the Baby Bells want to enter the long-distance, cable, and broadband data markets—or each others' local phone markets, now that the service no longer is a natural monopoly. Federal legislation during the late 1990s relieved the Baby Bells of many strictures adopted in 1983 and altered the law in other ways, setting the stage for more competition. See *AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). But with a greater potential for competition comes a greater potential profit from reducing competition. When all local markets were natural monopolies, no one would have cared whether two Bell operating companies merged. Today, however, each of the Baby Bells—now grown up— offers potential (and perhaps actual) competition to check the ambitions of every other telecommunications company. It may be that technology has changed so much that today competition is unstoppable, and the absorption of one Baby Bell by another would not impede entry at the local level. This is the position SBC and Ameritech advocate. But it has yet to be tested in litigation.

The problem, as the district court saw things, is that the precise shape of the merger, and the conditions of entry in its wake, cannot yet be known. Ameritech is

the local-service provider in Illinois, Indiana, Michigan, Ohio, and Wisconsin; SBC operates in Arkansas, California, Connecticut, Kansas, Missouri, Nevada, Oklahoma, and Texas. Illinois and Ohio asserted regulatory jurisdiction over the merger; the firms also need the approval of the Federal Communications Commission. By the time the district judge dismissed the suit, none of the agencies had acted, and the judge observed that they could either block the merger or impose conditions (which the firms might or might not accept) that would alter the way it affected competition. Between the district judge's decision and oral argument of this appeal, Ohio gave permission, accompanied by a lengthy list of conditions. Illinois approved the merger, subject to its own conditions, two days after oral argument. The FCC has yet to be heard from.

■ Plaintiffs' appeal has been met with a jurisdictional objection. The district court dismissed the suit for want of jurisdiction, expressly without prejudice to refiling after the final shape of the merger is known. Ameritech and SBC contend that dismissals without prejudice are not final, and therefore not appealable. That's true when, for example, a judge grants summary judgment on one claim in a complaint, and the litigant dismisses another without prejudice, planning to reinstate the dismissed claim after receiving an appellate decision on the first. Such a "dismissal" is smoke and mirrors; the reality is that the case is ongoing in the district court, and 28 U.S.C. § 1291 does not authorize appeal from resolution of a single claim in a multi-claim or multi-party case, except under the conditions in Fed. R.Civ.P. 54(b). See *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 776 (7th Cir. 1999). But there was nothing tentative about the district court's dismissal; no one is trying to achieve an interlocutory appeal without meeting the statutory requisites. This case has come to a close in the district court, without prejudice in the same sense that *every* jurisdictional

dismissal is without prejudice to litigation of the merits in some other court or at some other time. No one doubts that a party aggrieved by dismissal for lack of jurisdiction may appeal. Whether the district judge should have equated lack of ripeness to lack of subject-matter jurisdiction is debatable; sometimes prematurely filed suits are retained on the docket until it is time to proceed, see *United States v. Michigan National Corp.*, 419 U.S. 1, 95 S.Ct. 10, 42 L.Ed.2d 1 (1974), a step that would not be appropriate if jurisdiction were missing. A stay pending regulatory approval might well not be appealable. But the step the district judge took, an absolute dismissal, is a final decision, so we turn to the merits.

■ Relying principally on *United States v. Radio Corporation of America*, 358 U.S. 334, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959), plaintiffs contend that it is never appropriate to delay antitrust litigation pending the FCC's decision about a merger, because Congress has not given the FCC responsibility for making antitrust decisions. That, however, is not what *RCA* held. The district judge in *RCA* concluded that the FCC's approval is dispositive of all antitrust issues and dismissed a suit filed by the United States. The Supreme Court, by contrast, held that the FCC's views are informative but not conclusive, so that antitrust litigation may follow the merger's approval. A few agencies have the power to insulate mergers from antitrust suits, see 15 U.S.C. § 18; the FCC is not among them. *RCA* means that plaintiffs are entitled to their day in court; it does not mean that the court should try to beat the FCC to the punch. How can the FCC's views receive a respectful audience if the court enters judgment first?

Courts often wait for agencies, even when the agencies' views are not legally conclusive—not only because the agencies may have something helpful to say, but also because what the agencies *do* may shape the litigation. Plaintiffs express

concern that the merger will reduce potential competition between SBC and Ameritech. It is easy to see that after the merger SBC and Ameritech won't compete with each other, but much more difficult to assess how consumers will fare as a result. That depends on how readily other competitors may enter the market, which can be affected if not dominated by regulatory barriers. See *United States v. Citizens & Southern National Bank*, 422 U.S. 86, 95 S.Ct. 2099, 45 L.Ed.2d 41 (1975); *United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 94 S.Ct. 2856, 41 L.Ed.2d 978 (1974). It is impossible to analyze a potential-competition claim without understanding the barriers to entry that future rivals must surmount. Regulatory agencies can raise or lower these barriers. Perhaps the FCC will condition its approval on changes that facilitate rivals' entry. Until the agencies have had their say, it is impossible to perform the sort of antitrust analysis that is integral to a potential competition case, and it therefore would be a waste of everyone's time to proceed. Antitrust litigation can be very costly; an expensive challenge to a moving target is worse than pointless.

■ When delay is harmless to the plaintiff, the best response to an unripe suit is dismissal. *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952). The Court added in *Michigan National* that a suit should be retained on the docket, rather than dismissed, when necessary to avoid prejudice to a party. The transaction being challenged in *Michigan National* required two regulatory approvals, and a statute set a time limit of 30 days following approval for litigation to commence. The United States, fearing that the 30 days ran independently from each approval, filed suit after the first, ensuring that it would eventually be entitled to contest both regulatory decisions (should the second be favorable to the applicants). The Supreme Court concluded that the short deadline justified commencing the suit even before

the second agency acted, and thus while it was still possible that the transaction would never go forward (because the second agency might say no)—though the district court should keep the suit inactive until the second agency acted. The four-year statute of limitations for antitrust suits, 15 U.S.C. § 15b, means that our plaintiffs were under no equivalent pressure to get their suit on file. Because 15 U.S.C. § 26, which authorizes injunctive relief in private antitrust actions, refers to principles of equity, plaintiffs purport to fear a laches defense if they file suit only after the merger has been consummated. Whether that possibility was ever substantial in light of *United States v. E.I. du Pont De Nemours & Co.*, 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957), and *RCA*, 358 U.S. at 352, 79 S.Ct. 457 we need not decide, for SBC and Ameritech have formally waived their right to interpose a laches defense, provided that plaintiffs file a new suit within 30 days of the final administrative approval. This assurance eliminates the last possible justification for this gun-jumping suit.

AFFIRMED.