In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3864

South Austin Coalition Community Council, et al.,

Plaintiffs-Appellants,

v.

SBC Communications Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 7232--Blanche M. Manning, Judge.

Submitted November 14, 2001/*--Decided December 19, 2001


  Before Easterbrook, Kanne, and Evans,
Circuit Judges.

  Easterbrook, Circuit Judge.  SBC
Communications and Ameritech--two of the
Baby Bells created by the breakup of AT&T
in 1983--merged in 1999 after receiving
approval from the Federal Communications
Commission and several state regulators.
The Antitrust Division of the Department
of Justice declined to file suit. But
this did not deter the plaintiffs in this
case, which have sued twice. The first
suit, filed before SBC and Ameritech had
obtained the necessary administrative
approvals, was dismissed as premature.
191 F.3d 842 (7th Cir. 1999). This second
suit, filed immediately after the
approvals, has been dismissed for want of
standing. 2001 U.S. Dist. Lexis 9850 (N.D.
Ill. June 22, 2001).

  When the local-service subsidiaries of
AT&T were spun off in the 1980s, most
people assumed that local phone service
is a natural monopoly. This was a premise
of the divestiture, and each Baby Bell
was constituted as a monopoly in its
service area. By the time of the merger
the technological basis of this natural-
monopoly assumption had come into serious
question, and the legal barriers to
competition also were in the process of
being dismantled. Thus the antitrust
objection to the merger was based on
potential rather than ongoing

competition. The agencies were concerned--and in this suit the plaintiffs contend--that, had SBC and Ameritech not merged, each would have entered the other's core markets and created extra competition to consumers' benefit. The complaint alleges, for example, that but for the merger SBC would have begun to offer local phone service in Chicago (part of Ameritech's original territory), and Ameritech would be offering local service in St. Louis, an area assigned to SBC in the AT&T divestiture. The FCC and the Antitrust Division concluded that, even if this is so, many other rivals remain--and that as a practical matter there is effective competition between land lines and cellular service, so that competition prevails even in markets that have a single land-line local-service provider. But official approval does not immunize a phone merger against private antitrust challenge; sec.7 of the Clayton Act, 15 U.S.C. sec.18, confers immunizing power on the Surface Transportation Board, the Federal Power Commission, and several other bodies, but not on the FCC or the Antitrust Division. So private plaintiffs are free to seek divestiture. See California v. American Stores Co., 495 U.S. 271 (1990).

Plaintiffs allege that the merger has reduced long-run competition. This implies not only injury-in-fact (the core of the Article III standing requirement) but also "antitrust injury." That is to say, these plaintiffs complain about the kind of injury (reduced output and higher prices) against which the antitrust laws are directed. See Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328 (1990); Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104 (1986); Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477 (1977). Nonetheless, the district court dismissed the complaint for want of standing. The court's opinion summarizes at length the conclusions of the administrative agencies approving the merger and then states, without additional reasoning, that the allegations of the complaint are too "speculative and vague" to justify putting the administrative conclusions to the test. This approach has nothing to do with standing. Complaints need not be elaborate, and in this respect injury (and thus standing) is no different from any other matter that may be alleged

generally. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The district court's approach amounts to a conclusion that the complaint fails to state a claim on which relief may be granted--and this is how SBC (the surviving firm in the merger) chooses to treat it. It does not attempt to defend the district court's standing rationale but argues instead that antitrust complaints must be more thorough than the normal civil complaint, the better to curtail the high cost of antitrust litigation by facilitating early disposition.

That is not correct. A pleading is sufficient if it contains

(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Fed. R. Civ. P. 8(a). Plaintiffs' complaint does all of these things and may not be dismissed just because it does not do more. Rule 9 sets out special pleading requirements for some matters, such as fraud and admiralty, but it does not require extra detail for antitrust suits--and the Supreme Court insists that courts not add to the requirements of Rule 8. See, e.g., Leatherman v. Tarrant County, 507 U.S. 163 (1993); Gomez v. Toledo, 446 U.S. 635, 640 (1980); cf. Crawford-El v. Britton, 523 U.S. 574 (1998). Doubtless antitrust litigation is expensive, but Congress has not responded to this expense with extra pleading requirements--as it did, for example, in the field of private securities litigation. See 15 U.S.C. sec.78u-4(b). As long as Rule 8 stands unaltered, and there is no antitrust parallel to the Private Securities Litigation Reform Act, courts must follow the norm that a complaint is sufficient if any state of the world consistent with the complaint could support relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see also, e.g., Conley v. Gibson, 355 U.S. 41, 45-46 (1957). It is not necessary that facts or the theory of relief be

elaborated. See Walker v. National Recovery, Inc., 200 F.3d 500 (7th Cir. 1999); Bennett v. Schmidt, 153 F.3d 516 (7th Cir. 1998). District courts may mitigate the expense of litigation by resolving motions for summary judgment early in the case--in advance of discovery, if appropriate, for summary judgment may be sought at any time. See Fed. R. Civ. P. 56.

Still, a pleader may volunteer enough to show that the claim cannot succeed, and then dismissal under Rule 12(b)(6) follows. See American Nurses' Association v. Illinois, 783 F.2d 716 (7th Cir. 1986). Plaintiffs have done just this by alleging that before the merger both SBC and Ameritech were regulated common carriers, each a monopolist of land-lines service in its assigned territory. Thus plaintiffs allege a diminution in potential competition, rather than a merger between firms currently competing in overlapping markets. And this is fatal to the suit, because an exception to sec.7 of the Clayton Act carves out of its scope a merger of common carriers that do not directly compete. The critical portion of sec.7 reads:

Nor shall anything herein contained be construed to prohibit any common carrier subject to the laws to regulate commerce from aiding in the construction of branches or short lines so located as to become feeders to the main line of the company so aiding in such construction or from acquiring or owning all or any part of the stock of such branch lines, nor to prevent any such common carrier from acquiring and owning all or any part of the stock of a branch or short line constructed by an independent company where there is no substantial competition between the company owning the branch line so constructed and the company owning the main line acquiring the property or an interest therein, nor to prevent such common carrier from extending any of its lines through the medium of the acquisition of stock or otherwise of any other common carrier where there is no substantial competition between the company extending its lines and the company whose stock, property, or an interest therein is so acquired.

15 U.S.C. sec.18. Both SBC and Ameritech were common carriers. The last clause of

this sentence allows "such common carrier" to "extend" its lines by merger, provided that "there is no substantial competition between the company extending its lines and the company whose stock, property, or an interest therein is so acquired." "[S]uch common carrier" must refer back to the introductory clause—a "common carrier subject to the laws to regulate commerce". Do telecommunications carriers meet that description? They are subject to many laws regulating interstate commerce, but the context of this phrase, with its reference to "branches or short lines," coupled with the date of its enactment (1914), raises the possibility that it covers only railroads subject to the jurisdiction of the Interstate Commerce Commission (now morphed into the Surface Transportation Board). But that would not be the right reading, as we concluded in Navajo Terminals, Inc. v. United States, 620 F.2d 594 (7th Cir. 1979), when applying this language to a merger of motor carriers. Section 7 has a separate exemption for railroad mergers approved by the Surface Transportation Board; the sentence we have quoted thus would be surplusage if read as limited to railroads. And the legislative history—the enactment history, not the fog of words generated by legislators—shows that "common carrier" means all common carriers. The version of sec.7 that passed by the House used the word "railroad"; the Senate amended this to "common carrier", a broader designation; the House acceded to the Senate's amendment. The Senate's committee report observed that this change was made precisely to "apply to any common carrier, thus including telephone and pipe lines". See Earl W. Kintner, Legislative History of the Federal Antitrust Laws and Related Statutes 1748, 2466 (1978), which collects this and related background material. We rely on the legislative deeds, not the accompanying explanation that restates the obvious. Understandably, in light of this history, plaintiffs do not contend that the phrase "common carrier subject to the laws to regulate commerce" is limited to those entities regulated by the Interstate Commerce Commission in 1914.

What plaintiffs do argue is that the world has changed since 1914. When sec.7

was enacted, regulated common carriers rarely competed, and then did so only by sufferance of the agencies after securing certificates of public interest, convenience, and necessity. Today most regulated industries, including telecommunications, have been deregulated in whole or in substantial part; the Telecommunications Act of 1996 plus the advent of wireless phone technology have brought competition to the local phone market, and plaintiffs argue that we should not read the exceptions to sec.7 to reduce the force of this competition. The factual premise of this contention is doubtful. In 1914 railroad lines often competed; even when tracks were laid far apart, shippers had a choice of lines. Grain, livestock, and steel could go west from Chicago through St. Louis and the Union Pacific, or over the Northern Pacific lines through Minnesota and the northern tier, or could go by the Illinois Central (or barge down the Mississippi) to the Gulf of Mexico and then by ship through the Panama Canal. Competition among common carriers is not an invention of the late Twentieth Century. Even if competition among common carriers were a novelty, however, this would not affect the meaning of sec.7. The world may have changed, but the statute has not. As the Supreme Court remarked in National Broiler Marketing Association v. United States, 436 U.S. 816 (1978), when dealing with an antitrust exemption dating to 1920, a change in economic conditions is a challenge to Congress, not the courts; and if the legislature leaves exemptions alone, they must be enforced as written. The Supreme Court has not embraced Judge Calabresi's proposal, see Guido Calabresi, A Common Law for the Age of Statutes (1982), that old enactments be treated no differently from common law, equally subject to judicial upkeep.

This leaves plaintiffs' argument that potential competition should be treated as "substantial competition between the company extending its lines and the company whose stock, property, or an interest therein is so acquired" for purposes of sec.7. Yet this would leave no work for the exemption to do. It would rewrite sec.7 so that mergers of common carriers are exempt from scrutiny if and only if the merger would not violate sec.7 in the first place. The only

function of this exemption must be to distinguish potential-competition from actual-competition cases. If the merging common carriers do not compete actually or potentially, they face no antitrust risk. If they currently (and substantially) compete, then the exemption is inapplicable by its terms. Only potential competition remains to be affected by the exemption; this is the respect in which common carriers differ from, say, manufacturers or financial intermediaries. If two banks merge, the court must consider any reduction in potential competition as well as the reduction in ongoing competition. See, e.g., United States v. Marine Bancorporation, Inc., 418 U.S. 602 (1974). But if two common carriers merge, only the reduction in existing competition matters. That's all the exemption in sec.7 does; to end its application to potential competition is to wipe the exemption off the books. Leaving potential competition among common carriers to agencies rather than juries is hardly such a surprising step that courts should struggle against the reading. Assessing the significance of potential competition is difficult for the best economists and would be nearly impossible as a subject for trial-- especially when regulatory agencies exercise so much control over how common carriers interact.

   Plaintiffs' complaint concerns potential competition, for it acknowledges that SBC and Ameritech had lawful monopolies in local land-line service at the time of the merger. What plaintiffs want the district court to examine is the economic effect of eliminating each Baby Bell as a potential entrant into the other's territory. That is exactly the line of inquiry that the common-carrier exemption to sec.7 forecloses. Thus although we do not agree with the district court's opinion, its judgment may be sustained on other grounds. The judgment is modified to dismiss the complaint on the merits rather than for lack of jurisdiction, and, as so modified, is

affirmed.

FOOTNOTE

/* This appeal has been assigned to the panel that resolved the initial appellate proceedings con-

cerning this merger. See Operating Procedure 6(b). The panel has concluded that a second oral argument is not necessary.