DIAZ, Circuit Judge,
concurring:
I am pleased to join in full Judge Niemeyer’s well-reasoned majority opinion. I write separately to address a few of the contentions raised by my dissenting colleagues.
At a global level, I am concerned by the dissenters’ application of the abuse-of-discretion standard, which all agree is the prism through which we must measure the district court’s action in this case. The principal dissent authored by Judge King posits that the en banc majority would readily consent that the district court “certainly had the discretion” to grant Aikens’s Rule 60(b)(6) motion without fear of reversal. Post at 512-13. It then argues that the district court abused its discretion because “it could — and should — have found the ‘extraordinary circumstances’ necessary to grant Aikens’s motion” and criticizes the majority for “standing on ceremony” in affirming denial of the motion. Id. at 518-19.*
Yet inherent in the deferential abuse-of-discretion standard is an overarching command of “judicial restraint, which ... safeguard[s] the superior vantage points of those entrusted with primary decisional responsibility.” Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 320-21 (4th Cir.2008). When reviewing a lower court decision for abuse of discretion, words like “could” and “should” are not part of our judicial lexicon. Indeed, the standard “requires a reviewing court to show enough deference to a primary decisionmaker’s judgment that the court does not reverse merely because it would have come to a different result in the first instance.” Id. at 322. Ever cognizant that our evaluation in such a case is “only a posterior check on judgment which strays too far from the mark,” we must further realize that the abuse-of-discretion standard “draws a line ... between the unsupportable and the merely mistaken.” Id. Reversal is appropriate only in the former case.
Were I the district judge in this case, I might well have reached a conclusion different from that below and granted Aikens’s Rule 60(b)(6) motion. And if I did so, my opinion likely would have resembled the principal dissent. Once a case reaches our court, however, the applicable *505 standard of review often forecloses us from substituting our judgment for that of the district court. While the principal dissent convincingly demonstrates that the district court could have granted Aikens’s motion, it fails to establish that failure to grant the motion was so beyond the pale that it constitutes an abuse of discretion. The dissenters’ view of the appropriate standard comes perilously close to endorsing a system where this court zealously accords deference to district judges — but only when they reach the decisions that we would have reached in the first instance.
Turning to the Rule 60(b)(6) motion itself, the principal dissent posits that the requisite “extraordinary circumstances” are present here. It relies primarily on four cases to support this contention, but none has persuasive value under the circumstances of this case. In Compton v. Alton Steamship Co., 608 F.2d 96 (4th Cir.1979), we reversed a district court’s denial of a litigant’s Rule 60(b) motion. The moving party there, however, could not have appealed entry of a default judgment. Id. at 104 n. 14. Thus, we treated the motion as a substitute for the otherwise-unavailable appeal, noting that the litigant had filed the motion within ten days of judgment. Id. at 100, 104 & n. 14. In contrast, nothing barred Aikens from appealing the initial exhaustion ruling, rendering Compton inapposite.
The principal dissent finds a single decision in which this court has reversed denial of a Rule 60(b)(6) motion where appellate review was available and the moving party failed to appeal. See White v. Investors Mgmt. Corp., 888 F.2d 1036 (4th Cir.1989). White, too, is readily distinguishable from this case, as there the district court entered judgment without notice to either party and without a hearing “even though there was an outstanding order compelling the defendant ... to produce a critical document in the determination of the case.” Id. at 1040. We excused the plaintiffs failure to appeal because he moved quickly — within the ordinary thirty-day postjudgment window — to file his Rule 60(b)(6) motion. Id. at 1040-41. Aikens here proffers no similarly troubling due process concerns, and his motion was not timely filed, reaching the court over six months after the initial judgment was rendered and almost two months after the ABCMR decision.
A summary sketch of the other cases relied on by the principal dissent demonstrates their inutility here. The decision in Whitmore v. Avery, 179 F.R.D. 252 (D.Neb.1998), was animated by the need to show leniency to pro se prisoners, “bizarre changes” occurring throughout the pendency of the case, “exceptional turns and events” of the litigation, and “the morass that is habeas corpus jurisprudence.” Id. at 253-59 & 259 n. 4. Thompson v. Bell, 580 F.3d 423 (6th Cir.2009), involving a habeas petitioner on death row, similarly presents factors not present here — namely, the need to balance “the finality of the judgment against Thompson ... against the more irreversible finality of his execution,” id. at 444. Far from compelling this court to find “extraordinary circumstances” here, precedent fails even to support our extension of the term to the events of this case.
The principal dissent asserts that “Aikens selected the obvious and ... efficient option” in choosing to forgo appeal of the exhaustion ruling and proceed straight to the ABCMR. Post at 508. This assertion is puzzling, though, given the principal dissent’s claim that the district court’s exhaustion ruling was “demonstrably wrong.” Id. at 507. Perhaps recognizing this asymmetry, the principal dissent in a later footnote explains that “[this court] might instead have affirmed [on appeal] and Aikens would have ended up before *506 the ABCMR anyway.” Id. at 514 n. 9. But the principal dissent cannot have it both ways. Either the district court’s exhaustion ruling was patently erroneous, in which case Aikens’s failure to appeal cannot be excused. Or the district court’s exhaustion ruling was reasonable, critically weakening the principal dissent’s “extraordinary circumstances” argument.
The principal dissent next contends that Supreme Court precedent compelled the district court to identify a possible statute-of-limitations issue and sua sponte enter a stay after concluding that Aikens must exhaust his administrative remedies. In so doing, it reads Supreme Court precedent a bit too broadly. The Supreme Court has indeed confirmed that “a federal court [is permitted ] to stay proceedings in a case properly before it while awaiting the decision of another tribunal.” United States v. Mich. Nat'l Corp., 419 U.S. 1, 4, 95 S.Ct. 10, 42 L.Ed.2d 1 (1974) (emphasis added). And the Court has at least once ordered entry of a stay when a party has argued that the applicable statute of limitations may bar refiling of a claim after agency action. Carnation Co. v. Pac. Westbound Conference, 383 U.S. 213, 222, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966).
I doubt the applicability of Carnation to this case, as it dealt with a tightly cabined antitrust claim in the context of the doctrine of primary jurisdiction. See Guam v. Am. President Lines, 28 F.3d 142, 149 n. 11 (D.C.Cir.1994) (expressing skepticism about propriety of reading Carnation to endorse general proposition that, “where rights would be lost as a result of a statute of limitations bar, the district court must retain jurisdiction [after referring case to agency] in order to toll the limitations period”). And, in any event, Carnation and the Supreme Court cases relied on by the principal dissent include crucial elements missing from Aikens’s challenge. All were direct appeals from an exhaustion ruling, and in each the parties brought the statute-of-limitations issue to the attention of the court. Neither the Supreme Court nor this court has ever even intimated that a district -court must search the record for possible statute-of-limitations problems and sua sponte enter a stay after determining that a plaintiff has not exhausted his administrative remedies.
Turning to the possible statute-of-limitations bar confronting Aikens, the principal dissent posits that the district court in its denial of Aikens’s Rule 60(b)(6) motion “contradicted its assertion [in the exhaustion ruling] that its dismissal did not foreclose a new action, opining that the statute of limitations ... had likely expired well before the dismissal was even entered.” Post at 509 n. 5. “Surprisingly,” writes the principal dissent, “the court blamed Aikens, rather than itself, for creating the statute of limitations issue.” Id. Yet it is not the role of the district court to act as a roving advocate, providing legal arguments to the parties before it. No one raised the possible statute-of-limitations issue during the exhaustion dispute, and the district court certainly was not obligated to scour the record for possible defenses that could be asserted if the suit was refiled upon exhaustion. See Vazquez v. Cent. States Joint Bd., 547 F.Supp.2d 833, 861 (N.D.Ill.2008) (“[I]t is not the Court’s place to try to make arguments for represented parties.”). When confronted with the issue for the first time during the Rule 60(b)(6) briefing, the court unremarkably speculated that the limitations period had already run by the time of the exhaustion ruling. Nothing prevented Aikens from doing this same math during the exhaustion dispute and safeguarding his claim from later attack.
Tying a bow on its legal arguments, the principal dissent appeals finally to equity. In its words, “The Complaint depicts a literally unwarranted intrusion into the *507 private communiques of a citizen-soldier stationed many thousands of miles from home and serving in the best traditions of the nation’s militia, humiliated and disgraced by a nominal superior.” Post at 519. Calling “the cause [ ] just, the wayfarer worthy, and the path untrodden,” the principal dissent urges reversal of the district court’s judgment. Id. at 519.
Although I hesitate to delve into the merits, suffice it to say that the record also reveals an unseemly side to Aikens’s military service. As the majority opinion notes, Aikens was ultimately investigated for “hostile command climate” and “inappropriate relations with women,” and the findings were substantiated by the Department of the Army Inspector General. Aikens’s principal contention in this ease is that the evidence used to support the findings — personal emails — was obtained in contravention of his constitutional rights. The equities thus do not weigh one-sidedly in Aikens’s favor and ineluctably impel reversal, as the principal dissent would have it.
Admittedly, our decision today bars a full airing of Aikens’s claims. Because, however, I am satisfied that the deference owed the district court on appeal requires this result, I concur in the majority opinion.
Judge SHEDD, Judge DUNCAN, and Judge AGEE have authorized me to indicate that they join in this opinion.

 Judge Davis appears to venture even farther than the principal dissent, urging in his dissent that we adopt a sliding-scale approach where the amount of deference accorded district judges fluctuates based on how much appellate judges like the result. Standards of review, however, as the very bedrock of our decision-making authority, must mean something. And review for abuse of discretion must not be converted into de novo review, even though our personal views about the underlying judgment may tempt us so.